## S. YOSHIMASU *v.* JOHN VENHUIZEN.

### No. 1478.

APPEAL FROM CIRCUIT JUDGE SECOND CIRCUIT.
HON. D. H. CASE, JUDGE.

ARGUED JUNE 14, 1923.                    DECIDED JULY 28, 1923.

PETERS, C. J., PERRY AND LINDSAY, JJ.

INJUNCTION—*contracts—breaches of contract.*

An injunction to restrain a breach of contract will not be issued when the damages are not irreparable and the injured party has an adequate remedy at law.

SAME—*trespass.*

Equity will not enjoin a trespass or threatened trespass when the damages are not irreparable and the injured party has an adequate remedy at law.

OPINION OF THE COURT BY PERRY, J.

The respondent, being at the time the owner of a certain parcel of land situate at Kuiaha, Hamakualoa, Maui, known as "Homestead Lot No. 55," on December 2, 1918, entered into an agreement in writing with one K. Matsuoka wherein the respondent was described as the "landlord" and Matsuoka as the "tenant" and in which it was agreed in substance as follows: that the landlord "does hereby empower and authorize the tenant to enter immediately in and upon and use and occupy seventeen acres" of said homestead lot No. 55; that the tenant would in a skilful and proper manner "clear, plow, harrow, thoroughly prepare and plant with pineapple plants, selected from healthy plants," the seventeen acres in question and "weed, cultivate, harvest, haul and deliver all pineapples so harvested to the Haiku Fruit and Packing Company, there to be sold by the ton at the then current market price and credited to the landlord;" that the tenant would "have the whole of the said premises under cultivation not later than October 31st, 1919;" that the tenant would build and repair all fences on the premises and pay all taxes and assessments levied on the growing crops; that the landlord "in consideration of the performance of the above agreements and covenants by the tenant," would pay to the tenant seventy-five per cent of the proceeds of the sale of pineapples to the cannery; that the cannery was thereby authorized to pay to the tenant his share of the proceeds of the pineapples "and to charge the same to the account of the said landlord;" that the agreement was to continue in effect "until three crops of pineapples shall have been harvested and delivered;" that in case the tenant should neglect to keep the crops properly weeded and cultivated the landlord might at any time employ other labor and incur all necessary expenses for the proper maintenance and cultivation of the crops and charge the same to the tenant; that all pineapple plants

raised on the premises during the term should be divided, one-half to the tenant and one-half to the landlord; and that at the end of the term the tenant would cut down "all large weeds so that the land may be plowed or utilized by the landlord for agricultural purposes."

Matsuoka assigned this agreement to one Gibo on August 4, 1920. Gibo mortgaged it to the present plaintiff on the same day and assigned to Tamashiro on October 26, 1920. Tamashiro in turn assigned the agreement to the present plaintiff in June or July of 1921. On December 29, 1921, complainant filed a bill in equity alleging complete performance by the successive "tenants" of all of the duties by the agreement imposed upon them and an eviction of himself by the owner without just cause therefor and praying that an injunction be issued restraining the owner from interfering with the continued performance by the complainant of the duties of the "tenant" upon the land described in the agreement. A temporary injunction was issued to the effect prayed for and by final decree the temporary injunction was made perpetual. From that decree the case comes by appeal to this court.

The allegation of the bill and the theory underlying the prayer for equitable interference and relief are that by reason of the alleged breach by the owner of his part of the agreement of December 2, 1918, the complainant has suffered and will suffer irreparable injury and that, therefore, the petitioner has not an adequate remedy at law. This the respondent denies in his answer, adding that he "is a man of sufficient means to pay any judgment which might be obtained against him in the event of its being held that the petitioner has been prejudiced or wronged by any act of the respondent." There is no allegation in the bill of financial inability on the part of the respondent to compensate the complainant for any damages suffered by him.

It is argued by the complainant that the agreement of December, 1918, is a lease and assignable and by the respondent that the agreement is not a lease but is a mere "cropping contract," non-assignable in its nature.

If the issue as to whether the eviction by the respondent was lawful and justifiable were properly before the court for determination, it might perhaps be material to consider the question of the assignability of the agreement; but in the view which we take relating to the jurisdiction of equity to grant relief upon the facts alleged in the bill, it will be unnecessary to determine the precise nature of the agreement.

The essence of the petitioner's complaint is that the respondent prevented him from carrying out his, the petitioner's, part of the contract with reference to the cultivation and harvesting of pineapples and otherwise. If this complaint is well founded in fact, the petitioner has an ample, speedy and adequate remedy at law in an action for damages and, perhaps, also in an action of ejectment or an action to quiet title. The damages are susceptible of definite ascertainment. The measure of damages in favor of this complainant for wrongful eviction by the owner of the land would be the total sum receivable by him from the sales of the three crops of pineapples grown on the property less the total sum expended and to be expended by him during the term of the agreement for the production of the pineapples and the performance of the other duties cast upon him by the agreement. The amounts paid and to be paid by way of necessary expenditures under the agreement, the petitioner and other pineapple experts can form an estimate of and testify to. The same is true as to the crops producible on the land and as to the proceeds derivable from those crops. There are no complications in the case as far as compensation to petitioner is concerned which would make it impossible or

even difficult to ascertain the extent of his damage in terms of money. The damages, therefore, are not irreparable within the correct meaning of that term.

If the agreement is properly to be construed as a contract, on the one hand for the employment of the petitioner and on the other hand for the rendition of personal services and for the making of advances by the petitioner, clearly equity will not take jurisdiction or issue an injunction to restrain a breach of the contract unless under the particular circumstances of the case the damages were—as they are not—irreparable. 22 Cyc. 848. And even if the agreement is to be construed as a lease, the same rule applies. Equity will not take jurisdiction unless the damages are irreparable. A trespass and a threatened trespass will not be enjoined in the absence of irreparable damages or other distinctly equitable ground for interference. *Wundenberg* v. *Markham,* 14 Haw. 167. An injunction is not granted in order to effect a change of possession. *Ib.* Not even to stay waste is an injunction granted unless it appears that the injury would be irreparable. *McCandless* v. *Lee Chew,* 16 Haw. 530, 534. It is true that it has been said that "the jurisdiction of courts of equity to relieve tenants from the forfeiture of estates by reason of the non-payment of rent when due is thoroughly established and has long been recognized in this jurisdiction" (*Kanakanui* v. *De Fries,* 21 Haw. 123, 126) ; but even in such a case, if the only answer to the claim of forfeiture is that the rent has been paid, the tenant will be relegated to his remedy by an action at law or by defense to the action for summary possession or ejectment as the case may be. It is only where, the non-payment of the rent being admitted, the tenant sets up considerations calculated to appeal to a court of equity for relief from a strict enforcement of the terms of the lease, that equity will entertain jurisdiction. In the

case of other covenants, like those to repair, insure, and clear off lantana, relief will not generally be granted except in cases of fraud, mistake, accident or surprise. *Kanakanui* v. *De Fries,* 21 Haw. 123, 127. The present complainant in his bill denies that either he or his predecessors in interest ever committed any breach of the agreement and sets up no considerations intended to appeal to a court of equity as grounds for excusing a failure to perform. Therefore, even if this were to be regarded as an instance of a tenant attempting to ward off a forfeiture of his lease, equity would be without jurisdiction.

The decree appealed from is reversed and set aside and the bill is dismissed.

*A. G. M. Robertson* of the firm of Robertson & Castle (*E. Vincent* on the brief) for petitioner.

*E. Murphy* (also on the briefs) and *S. C. Huber* of the firm of Huber & Kemp for respondent.